Chief Judge Cooke
(dissenting). I respectfully dissent. The result reached by the majority, in affirming, allows insurers to avoid their primary responsibility for compensating for basic economic loss, and leaves innocent persons in a position whereby they may be unable to obtain full compensation for their injuries.
Plaintiff was injured while riding a motorcycle in September, 1977. As a result, he incurred extensive medical bills and lost income from work. In September,. 1978, he received a retroactive Social Security disability payment and began receiving regular disability payments. In January, 1980, plaintiff required further surgery, but defendant refused to pay on the ground that plaintiff had received the full amount of first-party benefits to which he was entitled. As eventually stipulated, this was calculated in the following manner:
Actual Payments
Medical Expenses $34,391
Lost Income
6,656
Credit “Payments”
20% Setoff 3,398
Social Security Setoff 6.937
$51,382
Defendant, which disbursed only $41,047 of its own funds, justified its position by referring to section 671 (subd 2, par [b]) of the Insurance Law. This provision authorizes an insurer to deduct from payments for “basic economic loss” (see Insurance Law, § 671, subd 1) amounts recovered or recoverable as Social Security disability benefits or workers’ compensation benefits. Defendant contends, and the majority accepts, that these credits may be used to reduce the insurer’s aggregate liability for basic economic loss, which may not exceed $50,000.
This approach falters because it assumes that these payments from other, “collateral” sources must be allocated to compensation for basic economic loss, a result not *1007 mandated by the statute. Rather, it must be recognized that the specified types of damages that are elements of basic economic loss may exceed $50,000 in amount and constitute extra losses not covered by no-fault insurance that may be recovered in a third-party lawsuit (see Insurance Law, § 673, subd 1).
The entire matter should be treated as simply a question of allocating all compensatory funds received by an insured.* By law, all automobile insurance policies must provide for payment of first-party benefits (Insurance Law, § 672, subd 1). It is the insurance company, therefore, that always has the primary obligation to satisfy claims for basic economic loss. The purpose of section 671 (subd 2, par [b]) is to allow insurers to be relieved of their burden to the extent that an insured receives compensation from collateral sources and does not have legitimate unpaid claims for damages that could be attributed to basic economic loss. This provision allows the insurance company to reduce its payments as claims are made by deducting collateral-source payments, thereby avoiding an insured’s obtaining a double recovery. As legitimate claims are progressively made, the insurance company will continue to credit the collateral-source payments, but it must satisfy any unpaid claims that would fall within the definition of “basic economic loss” until the insurer’s aggregate payments equal $50,000.
Requiring the insurance company to pay a full $50,000 in first-party benefits regardless of any collateral-source payments does not defeat the Legislature’s intent to reduce insurance costs. The provision for deductions simply allows the insurer to reduce its payments without reducing its over-all coverage. How this results in savings for the insurer is shown in the following example.
Example 1. As a result of an automobile accident, an insured, A, is seriously injured and unable to return to work for 15 months, with a loss of gross income of $1,250 per month. Medical expenses amount to $30,000. With the 20% reduction for lost wages under section 671 (subd 2, par *1008 [a]), A is entitled to $1,000 per month in first-party benefits (see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451). A^also receives $200 per month in workers’ compensation benefits, so the insurer would pay only $800 per month. Over the 15 months, A would receive a total of $45,000:
Medical Benefits $30,000
Lost Wages 12,000
Workers’ Compensation Benefits 3.000
$45,000
What is immediately apparent is that the insurance company has gained because it has not been required to pay the full amount of first-party benefits, but has saved $3,000 by virtue of the payment of workers’ compensation benefits. And, of course, it has received the benefit of the 20% reduction in lost gross wages, which amount — $3,750 — will have to be borne by A. Finally, there is the general benefit obtained from no-fault insurance arising from the avoidance of litigation.
The basic theory of plaintiff’s approach is quite simple. Recognizing that medical expenses and loss of income, for example, may easily exceed $50,000, it only requires that collateral-source payments are to be allocated first to the top end, i.e., those damages exceeding $50,000. This can be illustrated by analogy. An insured’s losses are represented by a long, vertical tube that is closed at the bottom. These losses are compensated by payments from the insurer — represented by a heavy, blue liquid — and from collateral sources — represented by a lighter, red liquid. There is only enough blue liquid to reach the $50,000 mark on the vertical tube. Being “heavier,” the insurance company’s payments will always sink to the tube’s bottom below the collateral-source payments as they both are poured in. Consequently, the insurance company’s payments are always allocated to “basic economic loss.” If there were claims for $75,000 and $25,000 was paid by collateral sources, those payments (the lighter, red liquid) would be “floating” on top of the insurer’s payments.
In effect, this method allows an insurer to take credit for collateral-source payments only to the extent that they do *1009 not cover claims in excess of $50,000. If, for example, the insured’s claims total $55,000 and he or she has received $7,000 from collateral sources, the insurer can reduce its payments only by $2,000, that being the amount of collateral-source payments in excess of claims greater than $50,000. In this situation, the insurer’s remaining exposure would be $2,000, which would have to be paid if a new claim is made and there are no further collateral-source payments. Of course, when the insured’s aggregate claims are less than $50,000, then the insurance company may take full credit for the collateral-source payments (see Example 1 above). It bears repeating that this credit may not also be taken to reduce the insurer’s over-all exposure.
The unfairness of the majority’s approach manifests itself when the insured’s losses aggregate more than $50,000 and collateral-source payments are involved. When the insured then sues to recover damages in excess of basic economic loss, the collateral source will have a lien that will reduce the amount of the judgment actually received (see, e.g., Workers’ Compensation Law, § 29, subd 1). When the insurer has also deducted these payments from its over-all liability, the insured will be left with less than a complete recovery. This is demonstrated in the following hypothetical situation.
Example 2(A). Assume the same facts as Example 1, but A’s injuries keep him out of work for 25 months, rather than 15. If the approach suggested by defendant and adopted by the majority is used, A is unable to recover all of his losses. Deducting at once the $30,000 in medical bills from first-party benefits, there remains a $20,000 “fund” for payments for other basic economic loss resulting from lost income. At $800 per month, this would be exhausted in 25 months. Under the majority’s method of allocation, however, the insurance company is not only able to reduce its monthly payments by the $200 paid by workers’ compensation, but the insurer may also credit these collateral-source payments against its aggregate liability. Thus, the $20,000 “fund” is exhausted after just 20 months. When A returns to work after 25 months, he will have received the following:
*1010 Medical Benefits $30,000
Lost Wages 16,000
Workers’ Compensation Benefits 5,000
$51,000
A’s actual losses would be:
Medical Bills $30,000
Lost Gross Income 31,250
$61,250
In a third-party lawsuit, A could recover $11,250, the excess over $50,000. The workers’ compensation lien, not including the setoff for costs and attorneys’ fees, would be $5,000 (see Matter of Kelly v State Ins. Fund, 60 NY2d 131), leaving a net recovery from the lawsuit of $6,250. When this is added to the $51,000 already received by A, he would have obtained compensation for only $57,250, $4,000 less than his actual damages. This inequity is compounded when it is recognized that the insurer has actually paid only $46,000. Thus, the injured party has not had a full recovery and the insurer has avoided meeting the full obligation expected of it.
Example 2(B). A different result occurs when payments are calculated under the approach championed by plaintiff, for A is able to recoup all of his losses. By this method, the $200 paid by workers’ compensation is deducted only from the insurer’s monthly payments, but not from its aggregate liability. Thus, the $20,000 “fund” is not exhausted until 25 months have passed. When A returns to work at that time, he will have received the following:
Medical Benefits $30,000
Lost Wages 20,000
Workers’ Compensation Benefits ' 5,000
$55,000
A’s actual losses again would be $61,250 and the workers’ compensation lien would be $5,000, so that a third-party lawsuit would still yield a net recovery of $6,250. When this is added to the $55,000 already received by A from the insurer and workers’ compensation, A¿s total recovery is equal to his losses.
*1011 Defendant’s assertion that plaintiff’s method of calculating first-party benefits would create a shifting threshold for bringing third-party lawsuits is unfounded. The critical definition is “basic economic loss,” which is unaffected by what payments are received from what sources. If the insured suffers losses exceeding the $50,000 covered by basic economic loss, a lawsuit may be commenced regardless of the receipt of payments from collateral sources. Should the insured balk at filing suit, the insurer will probably be able to initiate litigation on its own pursuant to the subrogation clause usually found in insurance policies (see 11 NYCRR 60.3 [b]). In any event, the manner for ascertaining whether the threshold has been met for bringing suit remains fixed, as does the dollar amount of the losses.
In sum, section 671 (subd 2, par [b]) does not relieve the insurer of its statutory obligation to pay $50,000 to cover basic economic loss. Instead, it contemplates only that when an insured makes claims that fall within the meaning of “basic economic loss” and receives payments from collateral sources, the insurer may take credit for these to the extent that collateral-source payments are greater than the aggregate amount of the claims in excess of $50,000. The approach adopted by the majority today leaves seriously injured parties in a position where they may be unable to recover the full amount of their damages. I do not believe that, in its earnest desire to reduce insurance costs, the Legislature intended to work such an inequity.
Accordingly, the order of the Appellate Division should be reversed.
Judgment affirmed, etc.

 It is recognized that persons other than the “insured” may receive first-party benefits under an insurance policy (see Insurance Law, § 671, subd 10; § 672, subd 1). For ease of reference, though, these will all be subsumed in the term “insured.”